**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-31-00059-TUC-SHR |
| Plaintiff, | **Order Re: Motion for Reconsideration** |
| v. | |
| Gila Valley Irrigation District, et al., | |
| Defendants. | |

Plaintiff United States and Plaintiff in Intervention San Carlos Apache Tribe (the "Tribe"), joined in part by the Gila River Indian Community (the "Community") (collectively, "Plaintiffs"), have filed a Motion for Reconsideration (Doc. 8549). The Court has reviewed the Motion and Defendants' Response (Doc. 8554). For the following reasons, the Motion is denied.

## I. Background

This case, in some form, has been ongoing for over 92 years. Most recently, in 2022, various motions were filed regarding sever and transfer applications for water rights initially associated with canals and issues related to certain wells. (*See* Docs. 8437, 8441, 8450, 8455, 8457 (motions for summary judgment); *see also* Doc. 8454 (motion to stay proceedings)). These 2022 motions, regarding parcels *with decree rights*, were pending for some time because the Court was considering a similar subflow issue in a related case. In the related case, the Court was tasked with determining whether wells *without decree rights* on land near the Gila River should be shut down. *See Gila River Indian Cmty. v.*

*Cranford*, Case No. 4:19-cv-00407-TUC-SHR ("*Cranford*") (Doc. 137).  After the Court resolved the subflow issues in *Cranford*, it then pivoted to determine how that resolution would impact the pending motions in this case.

To that end, on September 14, 2023, the Court held a status conference and discussed whether the Court should stay this case while the appeal in *Cranford* proceeds. (Doc. 8547.)  The Court raised the possibility of a stay sua sponte because many of the subflow issues in the *Cranford* case were "central to the pending motions for summary in this case."  (Doc. 8545.)  Following the status conference, the Court denied without prejudice all pending summary judgment motions as moot pending resolution of the appeal in the *Cranford* case.  (Doc. 8548.)

On September 29, 2023, Plaintiffs filed a Motion for Reconsideration (Doc. 8549) asking the Court to reconsider its decision.   Plaintiffs contend the Court should reconsider its order because it improperly denied the motions for summary judgment as moot and failed to weigh the relevant factors under *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936), before administratively staying the case.  (Doc. 8549 at 4–5.)  After the Court granted leave to respond, Defendants responded to the Motion.  (Doc. 8554.)  Defendants contend reconsideration is not needed because the *Landis* factors weigh in favor of a stay and the Court properly exercised its discretion to grant the stay and deny the pending motions for summary judgment without prejudice.  (Doc. 8554 at 9, 13–16.)

## II. Standard

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."  LR Civ 7.2(g)(1); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (motion for reconsideration appropriate where district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law").  Because there is no controlling definition of "manifest error" or "clear error" for motions for reconsideration, this Court

generally adopts the "clearly erroneous" standard used in the law-of-the-case doctrine. *Rsch. Corp. Techs. Inc. v. Eli Lilly & Co.*, No. CV-16-00191-TUC-SHR, 2022 WL 3647830, at *1 (D. Ariz. Aug. 24, 2022). Under that standard, the decision must strike the court as more than just "maybe or probably wrong"—it must be "dead wrong." *Id.* Additionally, a manifest error can be described as "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record. *See Manifest Error*, Black's Law Dictionary (11th Ed. 2019).

### III.    Discussion

The crux of Plaintiffs' argument is twofold, and both arguments are unavailing.

### A.    Dismissing Previously Pending Motions As Moot

Mootness is a jurisdictional issue requiring the Court to determine whether a case or controversy exists under Article III of the Constitution. *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015). For a dispute to remain live and avoid being dismissed as moot, "[t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990).

Upon reconsideration, the Court recognizes its use of the term moot may have been legally imprecise. However, the Court's use of the term moot was not the linchpin of its decision. Thus, the Court determines the previously pending motions are not moot, but the Court stands by its decision to deny the motions without prejudice. Thus, Plaintiffs have not shown how the Court's use of the term "moot" could possibly constitute manifest error.

### B.    Staying Proceedings

District courts have inherent authority to stay proceedings pursuant to their docket-management powers as set out in *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936), and applied in *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005), and its progeny. Before administratively staying a case, the Court must balance: (1) the harm to those requesting a stay; (2) the harm to those opposing the stay; and (3) the interests of judicial economy. *See Lockyer*, 398 F.3d at 1110. A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not

"necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. "A [*Landis*] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864. An administrative stay is different than a stay of judgment as contemplated by caselaw and Federal Rule of Civil Procedure 62. *Compare Lockyer*, 398 F.3d at 1109–10, *with Hilton v. Braunskill*, 481 U.S. 770, 776 (1987), Fed. R. Civ. P. 62, *and Nken v. Holder*, 556 U.S. 418, 433–35 (2009).

Here, the Court already implicitly considered and balanced the harms of the stay and the interests of judicial economy. (*See* Doc. 8548). While the Court's written Order did not cite *Landis*, the Court already considered the relevant factors before entering its Order. However, considering Plaintiffs' Motion, the Court will more thoroughly and explicitly address how the concerns it previously considered fit into the *Landis* analysis.

### i.  A Stay Inflicts Minimal Harm On Plaintiffs

There is minimal harm to Plaintiffs from a stay imposed at this juncture. (*See* Doc. 8548.) Assuming the Court had decided the motions in favor of Plaintiffs, the judgment would have been stayed pending appeal under the separate set of standards for staying a judgment.[1] (*Id.* at 2; *see also* Fed. R. Civ. P. 62.) Plaintiffs claim they are harmed by the Court's administrative stay because, if the court entered judgment in their favor, Defendants would have to "move for a stay pending appeal or post a bond." Additionally, Plaintiff United States argues it will miss out on the chance to be involved in the appeal while important issues of law are decided without its involvement. (*See* Doc. 8549 at 6–7 (noting the Court's ruling "denies the United States party status before the Ninth Circuit on these issues," among other things)). Not so.

---

[1]Because this discussion involves two different types of stays, for the sake of clarity, the Court will refer to the stay to which Plaintiffs object in their Motion (Doc. 8549) as the "*Landis* stay" or "administrative stay" and will refer to a stay of the judgment (not yet entered here) as contemplated by caselaw and/or Rule 62 as the "stay of judgment."

Plaintiffs will not be forced to sit on the sidelines as the case is litigated because they can still participate in the *Cranford* appeal to some extent and, even if they could not participate, their interests are still sufficiently represented. The United States is the only Plaintiff's party that is not a Plaintiff in both cases. While it claims it is technically left out of the appeal in *Cranford*, the United States could functionally operate as a party in the *Cranford* appeal. *See* Fed. R. App. P. 29(a)(2) ("The United States . . . may file an amicus brief without the consent of the parties or leave of court."); *see also* Fed. R. App. P. 29(b)(2) (same). The United States has not explained in its Motion how its interests will be tangibly impacted by its formal recognition as a party. Nothing prevents counsel for the United States from collaborating with counsel for Intervenor San Carlos Apache Tribe in the *Cranford* case or even reaching out to counsel for the Gila River Indian Community to provide input and insight on the United States' interests in the *Cranford* appeal.

Additionally, the United States fails to recognize the unique posture of its involvement. It is involved in this case not to represent its own interests but in its capacity as Trustee for a tribe. (*See* Doc. 8437 at 4 ("The United States, *as trustee for the San Carlos Apache Tribe* ("Tribe"), and the Tribe, move for summary judgment . . . ." (emphasis added)). Thus, the Court does not find compelling Plaintiff United States' argument it will be left out of the appeal in *Cranford* because the two Plaintiff-Intervenors here are the same as the Plaintiffs in *Cranford*. Because the entity the United States purports to represent is already representing its own interests in the *Cranford* case, the Court remains unconvinced the United States will be harmed by a stay.

Furthermore, the stay is not indefinite because the Court will lift it once the appeal in *Cranford* is complete which is expected to occur in just under two years. Given the nature of this case, the Court concludes the appeal proceedings will be complete within a reasonable time in relation to the urgency of the claims but does note that this factor weighs minimally against granting a stay.

### ii.   Harm To Defendants Does Not Favor Either Outcome

Many of the arguments under this factor amount to arguments about judicial

economy.  (*See* Doc. 8554 at 17–18 (noting Defendants' concerns of additional briefing and inefficiency)).  Therefore, the Court finds this factor does not weigh in favor of or against granting a stay.  The Court will consider Defendants' arguments under this factor as part of its judicial economy analysis below.

### iii.   *Judicial Economy Concerns Favor A Stay*

A stay is appropriate because judicial economy favors certainty on the unprecedented issues of first impression decided in *Cranford* before expending countless hours attempting to extend the *Cranford* ruling to this case and determine whether material factual issues remain.  The Court generally agrees with Defendants' analysis on judicial economy.  (Doc. 8554 at 18–21.)  As Defendants accurately note, applying the *Cranford* decision to the pending motions in this case is not as simple as Plaintiffs make it seem.  (*Compare id.* at 17, *with* Doc. 8549 at 7 ("Straightforward application of *Cranford* would fully resolve the United States and Tribe's motion to shut down the Daley/GVID wells.")).  For one, the Plaintiffs' claims regarding the Daley/GVID wells are fundamentally different because those landowners have decree rights whereas the landowners/well operators in *Cranford* do not.  Additionally, the remedy for a violation of the Decree for a non-decreed well and a decreed well would potentially be different.

All the claims for wells in this case raise subflow issues and questions about how the wells should be administered under the Decree.  What is clear is all these issues will be unraveled if the Court's *Cranford* ruling regarding the extent of the subflow zone and the saturation presumption is overturned.  Therefore, the Court is unwilling to spend hours taking a hard look at each well in this case and applying the saturation presumption when the *Cranford* Defendants have already appealed the ruling to the Ninth Circuit.  Last, as the Court has already recognized, it will require new briefing in this case on how to apply the principles set out in the *Cranford* ruling even if the Ninth Circuit does not overturn its ruling.  This factor weighs heavily in favor of granting a stay under *Landis*.

### IV.   Conclusion

After taking a closer look and following a more categorical approach in this Order,

the Court finds no error, let alone a manifest one, to reconsider its ruling.  As discussed above, the Court already weighed the relevant factors before it issued the *Landis* stay in this case.  Therefore, because Plaintiffs failed to show manifest error and their Motion amounts to nothing more than pointing out technicalities, their Motion is denied.

Accordingly,

**IT IS ORDERED** the Motion for Reconsideration (Doc. 8549) is **DENIED**.

Dated this 24th day of January, 2024.

Honorable Scott H. Rash
United States District Judge